## Keller-Pike Company *v.* Wetter, Appellant.

*Contracts—Damages—Building contract—Contractor and subcontractor—Arbitration clause—Counterclaim—Effect of architect's decision—Charge to jury—Harmless error—Appeals—Practice, Supreme Court.*

1. A party may not sit silent and take his chances of a verdict and then if it is adverse complain of the matter which, if an error, would have been immediately rectified and made harmless.

2. On appeal from a judgment on a verdict for plaintiff in an action by a subcontractor against a contractor to recover a balance due on a building contract, where there was a counterclaim for delay, the appellant cannot be heard to complain that particular portions of the charge of the court did not clearly convey to the jury that the plaintiff was responsible for the delays of its subcontractors where the case was tried throughout upon the theory of such liability where the charge as a whole is not open to the objection and was not misleading but was a fair presentation of the case; and the court's attention was not called to the alleged error at the trial.

3. In such a case the plaintiff may recover for the installation of temporary lighting facilities alleged to have been installed by the plaintiff on the verbal order of the defendants and their superintendent, without showing a written order and without a prior offer and refusal to submit it to the decision of the architect, although the original contract between the parties for the erection of a mechanical plant provided that all questions in dispute should be submitted for decision to the architect and that all orders for extra work should be in writing, where it appears that such original contract did not include electrical equipment which was the subject-matter of a subsequent contract which contained no arbitration clause nor any provision requiring written orders for extra work and that the work for which recovery was sought was done after the second contract was entered into.

4. In such a case the defendant is entitled to set off the cost of installing certain hose reels and racks, where it appears that the question whether such articles were included in the original contract was referred to the architect who decided that they were properly within the contract, and that subsequently the plaintiff was notified of the decision and recognized the authority of the architect to decide the dispute as well as the validity of his award; and where in such case the verdict of the jury improperly includes such an amount, the judgment entered thereon may be reduced by the Supreme Court.

Argued Jan. 6, 1916. Appeal, No. 268, Jan. T., 1915, by defendant, from judgment of C. P. No. 1, Philadelphia Co., June T., 1913, No. 5114, on verdict for plaintiff in case of Keller-Pike Company v. Charles G. Wetter, trading as George F. Payne and Company. Before MESTREZAT, POTTER, STEWART, FRAZER and WALLING, JJ. Modified and affirmed.

Assumpsit to recover a balance alleged to be due under a building contract. Before Shoemaker, J.

The opinion of the Supreme Court states the facts.

The court instructed the jury in part as follows:

"If you find this delay was not caused by Keller-Pike Company, then plaintiffs are entitled to recover here on all the items except a few, which I will call your attention to as I go over them."...... (1)

"Now, gentlemen, if you find that the plaintiffs are not responsible for any delay in completing this building, or if any delay that was caused was not their fault, but caused by the defendants or their other contractors, then your verdict should be for the amount of this claim, $10,802.45 less $164.99; subject, however, to the claims the defendants make, which you may find are just claims." (2)

The defendant submitted, among others, certain points for charge, which with the answers thereto were as follows:

"6. Clause 10 of the agreement between plaintiff and defendant provides that the architect shall be the 'sole umpire and arbitrator for the decision of any and all questions arising under this contract as to the quality and value of work and material furnished or for work done or any portion thereof; and all questions of payment' and that the decision of the architect shall be 'final and conclusive,' and plaintiff can recover in this case for alleged extra work only if there is evidence of an award by the architect in favor of the plaintiff for said extras.

Answer: "I decline that point." (6)

"7. Since the architect by the terms of the agreement between plaintiff and defendant is made sole arbitrator and his decision is final as to plaintiff's right to recover for alleged extra work and there being a dispute between plaintiff and defendant as to whether the items of $595.31 for temporary lighting, $30.00 for installation of radiators, $96.95 for installation of three conduits

and $16.42 for rearranging conduits are properly chargeable by plaintiff against defendant for extra work and there being no evidence that such dispute was referred to the architect for his decision and an award made by him in favor of plaintiff the court is without jurisdiction in the premises as to these items and the plaintiff can recover nothing on these said items.

Answer: "I decline that point, because the evidence is that the architect refused to arbitrate the difference between plaintiff and defendant." (7)

Verdict for plaintiff for $10,390.96 and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were (1, 2) instructions to the jury and (6, 7) answers to defendant's points.

*Ruby R. Vale,* for appellant.—A contract providing that all disputed questions between the contracting parties should be submitted to the architect precludes the parties from maintaining a suit at law on the contract for extra work without showing a submission or an offer and refusal to submit to the architect: McNally v. Montour R. R. Co., 33 Pa. Superior Ct. 51; Hartupee v. Pittsburgh, 97 Pa. 107; Gowen v. Pierson, 166 Pa. 258.

The question whether any provision of a contract has been waived is one of fact for the jury: Moore v. Carter, 146 Pa. 492; Murphy & Hamilton v. Liberty Nat. Bk., 184 Pa. 208.

*Frank P. Prichard,* with him *Ralph B. Evans,* for appellee.—If an instruction is erroneous upon the question of damages it is ground for reversal, but if the charge be only inadequate, it is the duty of counsel to ask for more definite instructions: Mastel v. Walker, 246 Pa. 65.

The reasonableness of a charge for extra work should be left to the jury: Moore v. Carter, 146 Pa. 492; Raff v. Isman, 235 Pa. 347.

OPINION BY MR. JUSTICE MESTREZAT, February 14, 1916:

George F. Payne & Company, the defendants, were the general contractors for the construction of the new Stock Exchange Building in the City of Philadelphia. The part of the work to be done under the contract, known as the Mechanical Plant, was sublet to Keller-Pike Company, the plaintiff, by a contract dated May 24, 1912. Payne & Company agreed to finish the building on or before December 1, 1912, and Keller-Pike Company agreed to do its part of the work by November 13, 1912. Subsequently, the Keller-Pike Company submitted a written proposal with specifications to the architect in which it agreed to install the permanent electrical equipment in the building. That work was not included in the agreement to install the mechanical plant. By an oral agreement, the price of the work was reduced and the architect instructed the plaintiff to do it, of which notice was given the defendants by the plaintiff. The work was done by the plaintiff, bills were rendered the defendants, and they received the contract price from the owner of the building. The Keller-Pike Company finished its part of the work about March 1, 1913, and the building was subsequently completed. Payments were made to the plaintiff during the progress of the work, and this action was brought to recover the balance due on the contract price, and for certain items of extra work done under each contract. The statement avers that the plaintiff completed its work on or about March 1, 1913, and that the delay in the completion of the work beyond the time specified in the contract was not due to the fault of the plaintiff, but wholly to the delay of the architect and of the defendants and their other subcontractors. Wetter filed an affidavit of defense in which, inter alia, he set up a counterclaim for failure to furnish certain items included in the contract and for damages by reason of the delay in the completion of the building which, as alleged, was "due solely and alone to the fault of the

plaintiff"; admits that the architect requested him to enter into a contract with the plaintiff for the electric wiring and that it did the work and the charge therefor was paid to the defendants by the owner; denies that the temporary lighting plant was ordered orally or otherwise, and sets up, as a defense to this part of the claim, the clause in the mechanical plant contract that "no extra work will be paid for unless price is agreed upon in writing before proceeding with the same." As a further defense, the defendants deny the jurisdiction of the court because of the provision in the mechanical plant contract between the plaintiff and defendants that all questions of dispute should be submitted for decision to the architect. The defendants' counterclaim was made up of various items, one of which was $470.40 for furnishing hose reels and racks which, it was claimed, were included in the mechanical plant contract of plaintiff but were installed by defendants.

The court entered judgment for part of the claim for want of a sufficient affidavit of defense, and the parties went to trial as to the balance of the claim. There was a verdict and judgment for the plaintiff for the residue of the claim except four of the five items for extra work which the court directed the jury to disallow. The other item for extra work was $595.31 for installing the temporary electric lighting which, it was conceded, was not part of the original contract between the plaintiff and defendants.

The defendants have filed several assignments of error, but the controlling questions raised may be disposed of without discussing the assignments separately. It is contended that the charge of the court restricted the plaintiff company's liability for delay in completing the building to its own delay, and excluded from the jury's consideration the delay of the plaintiff's subcontractors. Two excerpts from the charge in which the court speaks of the delay of Keller-Pike Company without referring to its subcontractors are the grounds on which defend-

ants rest their contention. The case was tried on directly the opposite theory. The failure to install the boilers and radiators within the time specified in the contract was the principal cause of the delay in completing the building, as alleged by defendants, and this work was to be done by the plaintiff's subcontractors. The plaintiff alleged that they were installed as soon as the building was ready to receive them which was denied by the defendants. Much testimony was submitted on both sides of the controversy, and the record does not disclose that the plaintiff at any time denied its liability if its subcontractors had failed in the performance of this or any other duty enjoined by its contract with the defendants. The charge itself, as a whole, clearly shows that Keller-Pike Company was treated as responsible for any delay caused by its subcontractors. The court charged: "The contract between Payne & Company and Keller-Pike Company required that Keller-Pike Company should do their part of the work by November 13, 1912......So, therefore, the question will come down to you primarily to decide, whether this building was completed in time and if it was not, whose fault was it?......You will recall that when the plaintiff's case was before you, correspondence with Keller-Pike Company was called for and read to you, in order to show that the delay in completing this building was occasioned by the subcontractors of Keller-Pike Company." The court then refers to Faith & Company as plaintiff's subcontractors for installing the boilers and doing a large part of the plaintiff's mechanical work, and reviews the testimony of the plaintiff's subcontractors as to how they were delayed by the defendants and their other subcontractors. The court again says: "There was evidently a delay beyond November 13th, and who was responsible for it? Was it Keller-Pike Company, or their subcontractors? Or, was it George F. Payne & Company or their other subcontractors. Now, the same thing relates to the radiators. The last of the radiators were received

on January 13, 1913, and set during February, 1913. There were letters introduced showing that a demand was made for a delivery of the radiators; Faith & Company said the building was not in a condition to have the radiators installed."

The appellants' counsel manifestly understood that the case was tried on the theory that the plaintiff company was responsible for its subcontractors, and that such was the effect of the charge. In his ninth and tenth points, he refers to the "plaintiff's failure to perform," and the "plaintiff's failure and neglect to complete" the work. In none of his eighteen points does he refer to the liability of the plaintiff's subcontractors or ask the court to say to the jury that the plaintiff is responsible for its subcontractors. On the contrary, at the conclusion of its charge, the court inquired if counsel desired any further instructions, and appellants' counsel replied that he only desired to call the court's attention to the item for temporary electric lighting. It was the duty of counsel then to suggest what apparently was assumed throughout the trial that the plaintiff was responsible for its subcontractors, and the court would unquestionably have so instructed the jury. A party may not sit silent and take his chances of a verdict, and then if it is adverse complain of a matter which if an error would have been immediately rectified and made harmless: Commonwealth v. Razmus, 210 Pa. 609, 611. The two excerpts from the charge, assigned as error, standing alone, might not clearly convey to the jury that the plaintiff was responsible for the default of its subcontractors, but the charge as a whole is not open to this objection and was not misleading, but was a fair presentation of the case and, therefore, these assignments must be dismissed.

We do not think the language quoted in the fourth assignment, when read in the light of other parts of the charge, imposes too heavy a burden of proof on the defendants in establishing their counterclaim. The mean-

ing of the trial judge, and the jury would so understand, was that the burden was upon the defendants to show that their counterclaim was just, and if the jury should so find or be of that opinion, they were entitled to it. In the use of the language complained of, the learned judge was not prescribing the measure of proof required to sustain the defendants' counterclaim, nor did he intend to say that the defendants should establish it by a higher degree of proof than in the ordinary case. In our cases, cited by the appellants, the objectionable word is qualified by other words which clearly required a higher degree of proof than in similar cases. In most jurisdictions in this country, it has been held that the language of the charge when used to indicate the degree of proof is not objectionable. We are convinced that the defendants were not injured by the instruction complained of, and if it was technically erroneous we would not reverse, as the trial consumed eight days and a mere suggestion by their counsel when notified to speak by the court at the conclusion of the charge would have corrected the error.

We do not agree with the defendants' contention that the court erred in submitting for the consideration of the jury the so-called extra item of $595.31 for temporary electric wiring of the building without showing a written order for the work and without a prior offer and refusal to submit it to the decision of the architect under the arbitration clause of the contract between the plaintiff and defendants for the installation of the mechanical plant. That plant was installed by the plaintiff under the contract of May 24, 1912, and contained clauses requiring written orders for extra work and for the submission of disputes to the decision of the architect, but it did not include the electric wiring of the building. The permanent electric wiring of the building was done by the plaintiff under another and later contract, which was a proposal in writing by the plaintiff and an order or acceptance by the architect. This contract contained

no arbitration clause, nor any provision requiring written orders for extra work.    During the progress of the work on the building, and before the installation of the permanent electric wiring, temporary electric lighting facilities became necessary and were placed in the building by the plaintiff.    The plaintiff claimed that the work was done on the verbal order of the defendants and their superintendent.    The defendants denied liability for the claim, and that they or their superintendent gave an order for the installation of the temporary plant, and as a further defense alleged that the claim was within clause three of the contract between the plaintiff and defendants requiring the price of the extra work to be agreed upon in writing.    The defendants also denied the jurisdiction of the court to adjudicate the question for the reason that by the terms of the contract between the plaintiff and the defendants it should have been submitted for the decision of the architect.    It is manifest, we think, that the installation of the temporary electric lighting plant was not extra work under the contract of May 24, 1912, and hence the clause requiring extra work to be ordered in writing is not a defense and the arbitration clause of that contract cannot be invoked to oust the jurisdiction of the court.    As suggested by plaintiff's counsel, if an extra at all, it was an extra to the contract for the permanent wiring of the building, which contained no arbitration clause or clause with regard to written orders, and hence these provisions of the contract of May 24, 1912, cannot be invoked by defendants to defeat a recovery of this item of the plaintiff's claim.    The installation of the temporary wiring was done, however, under a contract separate and distinct from the contracts for the installation of the mechanical and electrical lighting plants, and it is more than doubtful if the work can be properly called an extra to either of those contracts.

We think the defendants were entitled to the cost of installing the hose reels and racks in the building, and

that the court erred in its instructions as to this item of their counterclaim.   It is conceded that the hose reels and racks were on the plans of the building attached to the original contract, but Keller testified that they were not included in the plaintiff's contract.   The dispute was referred to the architect by the defendants, and he decided that they were in the mechanical plant contract, and, therefore, should be installed in the building by the plaintiff.   The plaintiff company was notified of the decision of the architect and required to install the articles at once.   It recognized the authority of the architect to decide the dispute as well as the validity of his award, and requested its subcontractors to do the work.   We think the question was within the arbitration clause of the contract, that the award was a valid exercise of the arbitrator's authority, and that the plaintiff was required to install the reels and racks in the building. This item is $470.40, and in accordance with the appellee's suggestion, the judgment will be reduced by that amount.

The judgment, as modified, is affirmed.